Johnson, Chancellor,
dissenting. I retain the opinion indicated by the order made on the circuit, and believing that the Court, in its judgment, have overlooked an important principle involved in the case, I feel myself constrained to express my dissent. The case is fairly and fully represented in the opinion of the Court delivered by *296 my brother Johnston'; but, for the purpose of making myself understood, it may be proper to repeat that, on the sale of the real estate of the late Governor Noble, by the Commissioner of the Court, he held in his hand, and exhibited to the bidders, the plat of a tract of land, called the Bordeaux tract, made by Peter Gibert, representing the land as bounded on the east by Little River, and containing 625 acres, exclusive of the river, and proposed to sell it to the highest bidder per acre, excluding a portion east of the river, which had been sold by Gov. Noble, in his life-time. This tract is made up of four different tracts, and in the plat exhibited, the termini of all the lines of these tracts are indicated by marked trees, (so says the report of the Commissioner,) on the western bank of the river. Lewis J. Patterson bid off the land at $11 75 per acre: and the question is, whether he is bound to pay by the acre for the land covered by the water of the river, to the thread or centre. I concur in the general principle, that when a water-course, a road, or avenue, is called for as a boundary, without more,, the grant extends to the centre. That was the case of Whitler vs. Harvey, 1 McC. 68. There, J. R. by his will, devised to J. R., his son, the lands lying on the eastside of an avenue,and to G. R. the lands on the west side, both of which belonged to him ; and it was held upon very clear principles, that the centre of the avenue, was the boundary between them, because it was apparent, that the testator intended to devise the whole, and there is nothing to limit the one or the other, to the eastern or western side of the avenue. But if instead of this, he had described the lands devised to J. R. by metes and bounds, terminating ata marked tree, on the eastern side of the avenue, and thence with the avenue to another marked tree, on the same side of the avenue, I do not perceive on what principle he could claim to the middle; and that is exactly this case, (see Jackson vs. Slackway, 15 Johns. 453, in which it is laid down, that where a stake is called for, on the side of a road, and a line from thence, running a certain course to another stake on the same side of the road, does not include any part of the road.) The case of Hatch vs. Dwight, 17 Mass. Rep. 289, reported also, in the appendix to Angel *297 ob. Water courses, page 74; is still more strikingly analogous. There, a piece of land was thus described in a release, “ beginning at the west end of the dam, on Mill River, at the upper mills, so called, and running up the river two rods, thence westwardly, (fee., and thence to the bank of the river.” And Parker, C. J., who delivered the judgment of the Court, remarks, that this description very clearly excludes any part of the river. Here, the termini of all the lines proceeding from, and approaching the river, are marked trees, standing on the western bank of the river. I concede, also, that a grant of land bounded by a navigable stream, entitles the grantee to the use of one half of the river, although the lines terminate at marks on the bank; not that it passes as so much land covered with water, for that is publici juris, but as appurtenant to the land on the bank. But it is clearly otherwise when the watercourse is not navigable, for that is the subject of grant, and for any thing that appears, the whole bed of this river has been granted to the owner of the opposite bank. If the rule now laid down by the Court, was to operate prospectively, only, parties might readily accommodate themselves to it, in framing their contracts. But it will be recollected that water-courses, navigable, and not navigable, are desirable and common boundaries of the lands granted on them; and if one half of the lands covered by the water, is a substantive part of the thing granted, and passes under lines terminating on the bank, the usual warranty contained in the form of the conveyance prescribed by law, extends to that also, and I need not refer to particular instances, to show the injurious effect of such a rule, and the endless litigation that may grow out of it. There is also a practical view of this question arising out of common observation. In a long experience at the Bar, and on the Bench, in questions involving the boundaries of land, I have never known one instance in which a surveyor, in computing the quantity of land bounded by a water-course, included any part of the water, where, as in this case the lines terminate on the bank; and there can, I think, be little doubt, that the purchaser here bought with reference to this general understanding ; including half of the 38 *298 river, in computing the quantity, was doubtless an afterthought.
Burt, for Complainant.
Wardlaw <fe Perrin, for the purchaser.
DAVID JOHNSON.